## W. M. ALDRIDGE v. C. F. ELERICK.

1. MORTGAGEE, *Rights of—Partnership Property.*  A mortgagee takes no, greater right or interest than the mortgagor had, and, as one partner cannot take possession of the partnership property, neither can his mortgagee do so.

2. FRAUD — *Finding, When not Disturbed.*  When the question of fraud is fairly considered by the jury, under proper instructions and with sufficient evidence, their finding will not be disturbed by this court.

3. CONTINUANCE — *Discretion of Court.*  The trial court has large discretion in the matter of granting a continuance, which was not abused in this case.

MEMORANDUM.— Error from Montgomery district court; J. D. McCUE, judge. Replevin by C. F. Elerick against W. M. Aldridge. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. Opinion filed August 6, 1895.

The statement of the case, as made by DENNISON, J., is as follows:

About November 15, 1888, one A. Clymer and —— Lee were the owners of a stock of merchandise, and doing business in Elk county, Kansas; and at that time this defendant in error, C. F. Elerick, purchased or traded for Lee's undivided one-half interest in said stock of goods, and he and said Clymer entered into a partnership for the purpose of carrying on a mercantile business in Elk City, Kas.   On November 30, 1888, Albert Clymer gave a note to the Ridenour-Baker Grocery Company for $136.10, secured by a chattel mortgage upon a general stock of boots and shoes, hats, caps, clothing, gentlemen's furnishing goods, glassware, queensware, and provisions, being the entire stock of general merchandise had, kept and possessed by the mortgagor and one C. F. Elerick,

and had in a certain brick building on the west side of Main street of Elk City, and owned by Rudolph Meyers. One of the stipulations in the mortgage is as follows:

"This mortgage is subject to two others to C. F. Elerick, aggregating about $900, said mortgagee being now in possession and selling goods for cash and applying the proceeds to the payment of said mortgages; and as soon as they are paid the proceeds to be applied to this."

Shortly afterward, C. F. Elerick, this defendant in error, purchased said Clymer's interest in said goods, and boxed them up preparatory to shipping them to McCune, Kas. This plaintiff in error, W. M. Aldridge, as constable in and for the township of Louisburg, in Montgomery county, Kansas, seized said goods and took them into his possession. Thereupon, on the 18th day of March, 1889, this defendant in error, C. F. Elerick, brought suit in the district court of Montgomery county, Kansas, against said Aldridge, and alleges in his petition that he is the owner of the goods, and charges the said Aldridge with having unlawfully converted and disposed of the same to his own use and benefit, and refuses upon demand to deliver up the same, and alleges that the value of the goods was $3,175.63, and demands judgment for that amount.

In his answer, said Aldridge admits the taking of the goods, but claims they were taken by virtue of a chattel mortgage executed by A. Clymer to the Ridenour-Baker Grocery Company; alleges that he was duly authorized by said Ridenour-Baker Grocery Company, as its agent, to take and hold the said property and foreclose the same. He also alleges that he held said property as constable, subject to the said mort-

gage above mentioned, under and by virtue of four separate executions issued by J. P. Swartzel, a justice of the peace of Louisburg township, Montgomery county, Kansas, upon judgments duly rendered by said justice — one of them being against A. Clymer in favor of J. W. Brigham & Co., and one of them against A. Clymer and one Lee in favor of Goldsteine, Freidman & Co., and one against A. Clymer and Lee in favor of the Consolidated Tank Line Company, and one against A. Clymer and —— Lee and —— Lee in favor of M. Wallace. Said Aldridge also alleges that the sale of Lee to Elerick and of Clymer to Elerick were both fraudulent, and made with intent to cheat, defraud and delay the creditors of the said Clymer and Lees, and that said goods were liable for and subject to the demand of the above-mentioned claims. The mortgage and the four executions are in the case-made as part of the record in the case. The execution of the Consolidated Tank Line Company and of Goldsteine, Freidman & Co. and of M. Wallace were each of them returned unsatisfied on January 14, 1889. All of said goods were sold by said Aldridge, and $157.34 was paid on the chattel mortgage, and $279.36 credited upon the execution of J. W. Brigham & Co. against Clymer. This is the account made of the proceeds of said sale.

*Arthur B. Clark*, for plaintiff in error.
*Fuller & Randolph*, for defendant in error.

The opinion of the court was delivered by

DENNISON, J. : If this plaintiff in error had any authority for seizing and disposing of the goods in controversy, it was by virtue of the chattel mortgage given by A. Clymer to the Ridenour-Baker Grocery

Company, and the execution of J. W. Brigham & Co. against Clymer. The executions which were returned unsatisfied on the 14th day of January, 1889, were certainly no defense which could have been set up by said Aldridge to a suit begun on the 18th day of March, 1889. Therefore, unless said Aldridge has authority by virtue of said mortgage and said execution of Brigham & Co., he had none. Elerick, this defendant in error, had purchased Lee's undivided one-half interest in said goods, and was a partner with said Clymer at the time Clymer gave said mortgage, and said Elerick had purchased Clymer's interest in said goods prior to the time of the levy of the execution of Brigham against Clymer.

"A mortgage by an individual partner, for his own purpose, of all his right, title and interest in and to its real estate and other property of the firm, imposes no actual lien upon the property itself, or upon any part of it. The *corpus* is joint property. The interest of an individual partner consists only of his share in the surplus remaining after the payment of the debts and settlement of the accounts of the firm. It is not until that interest is ascertained definitely, and set apart as the share of the mortgagor, that his mortgage is available against any specific property." (Jones, Ch. Mortg., § 45.)

A mortgagee takes no greater right or interest than the mortgagor had, and, as one partner cannot take possession of the partnership property, neither can his mortgagee do so.

As to the rights of said Aldridge to hold said goods, under the execution of Brigham & Co., against Clymer, the court properly and fully instructed the jury as to the question of fraud in the transactions between said Clymer and said Elerick, and the jury found a general verdict in favor of this defendant in error, and

there was sufficient evidence to sustain said verdict. It is not the province of this court to disturb that finding. But, suppose the jury had held the sale from Clymer, as to his undivided one-half interest, fraudulent, and the officer had a right to sell Clymer's one-half interest : In that event, Elerick was entitled to recover, because Aldridge sold all the goods instead of the one-half of them.

"Where the officer sells the whole, when entitled to sell only the interest of the execution-debtor, the other owners may treat him as a tresspasser *ab initio*, and maintain their individual action against him." (*Spalding v. Black*, 22 Kas. 64, and cases therein cited.)

This plaintiff in error claims that the trial court erred in not granting a new trial because of the absence of the witness, T. J. White. T. J. White was served with a *subpœna duces tecum*, to bring with him certain papers and records, and said White afterward appeared in court and testified, and all the papers and records that he was required to bring, or which were desired by this plaintiff in error, appear in the records of this case and have been treated as though they had been duly offered in evidence. Therefore, this plaintiff in error has not been prejudiced by the refusal of the court to grant a continuance in the case, and the court did not abuse the discretion given him in the matter of granting a new trial.

No prejudical error appearing in the record in this case, the judgment of the district court will be affirmed.

All the Judges concurring.